Good morning, Your Honors. May it please the Court. John Fitahi on behalf of the appellant Mark Young. We're here, Your Honors, because Judge Rio granted summary judgment on all of Mr. Young's claims, despite the existence of several genuine issues of material fact. As far as the excessive force claims, it's our position that the use of pepper spray and the use of the police baton, regardless of how many strikes were actually used, would be excessive under the circumstances. What was the issue of fact? What's the issue of fact in there? Well, Your Honor, technically, I don't know that there is an issue of fact, because the plaintiff's evidence would support judgment in his favor, and there was really no admissible evidence submitted by the appellees below in the district court. I thought you said that the district court erred because he granted summary judgment in the face of material issues of fact. That's why I asked you what were the material issues of fact. Right, Your Honor. Well, because we didn't move for summary judgment on our behalf, I suppose the Court would be correct that technically that issue is not before the Court. But on plaintiff's evidence and the reasonable inferences therefrom, which are supported by Mr. Young's declaration and the expert declaration as well, there's no way that the Court could really say that the defendants have met their burden of proving as a matter of law that they're entitled to judgment in their favor. So you're suggesting there is really no, based on the only evidence we have in front of us, you're just saying if that were the only thing, you should have got summary judgment, but you didn't move? So we're to grant it to you? Well, I believe the Court could grant summary judgment to us, but we're not asking for that. You're just asking that it go back for the Court. You're saying that the Court erred because it entered summary judgment in favor of the defendants, and that was wrong as a matter of law? That's right, Judge Rollins. And our position is that at a minimum the jury should be allowed to decide whether the force used was objectively reasonable. But our fallback position obviously is that we have enough evidence in our favor that summary judgment could have been supported. But you're not getting the fallback position. That goes very well. But what about the false imprisonment? The false arrest claim, Your Honor, I think raises a little bit more substantial issues, but we believe that there are. A little bit less, I think you mean. I mean, you're not quite as confident with that. Is that what you're really trying to tell us? Well, Your Honor, there is some evidence on the other side on this claim, which distinguishes it from the excessive force claim. And case law? There is some case law, Your Honor, but. That's not your strongest claim. So let's get to your strongest claim. Well, we had one, excessive force. What about negligence? Is that as strong? The negligence claim, well, it includes the excessive force claim, which would be a duty to use reasonable care in using force, but. So it rises or falls with the excessive force claim? I think it rises and falls with the excessive force and the false arrest claim. If the court will entertain some argument on the. If you're relying on the false arrest claim, you're on thin ice. I'm speaking for myself. Okay, Your Honor. Let's forget the false arrest claim for a moment. Are you saying that the negligence claim will rise or fall with the excessive force claim? Taking the false arrest claim out of the picture, on the facts of this case, that's correct, Your Honor. Okay. Isn't the standard review on negligence looking at the severity of the crime, whether there was a posed threat, and whether one was actively resisting detention or attempting to escape? That would be true for the excessive force and the negligence claim. So the factors are the same. As far as the duty of care to use reasonable force by a police officer, that's correct. That's our view. So could you address those factors? Certainly, Your Honor. As far as the seriousness of the crime, this starts off with the traffic stop for a seat belt violation. There is a dispute from our perspective of whether a violation of 148 had occurred at the point when the force was used. The question for the court is really to balance the force used, which here is substantial and intermediate force, against the need for that force. And if the objective is to get Mr. Young to comply with a command to enter the truck, it's hard to imagine how the use of pepper spray would accomplish that, let alone the use of the police baton. If the objective is to accomplish an arrest, the 148A and the seat belt violation could have been cited out with a notice to appear, and there's no evidence that Mr. Young was going to refuse that. What about if the objective is to make sure that any threat to officers' safety is neutralized? I'm glad you asked that question, Your Honor. In this case, there is no articulated officer safety threat throughout the papers. There was no attempt, and we believe this is one of the reasons why the false arrest claim presents tribal issues, is that under United States v. Williams, which is, I believe, the only case that the appellees cite in support of their argument that there was probable cause, there has to be some sort of an officer safety concern. And here with a lone driver, there are no passengers that could split the officer's attention. It's daytime. He's in a position of disadvantage seated on the curb eating some vegetables undisputedly. Broccoli. I believe, Your Honor, it's a broccoli and a tomato, one in each hand. He had one in one hand, one in the other.  Well, there was an allegation at some point during a deposition of that, Your Honor. There was a carrot and a tomato. There were no legumes involved. It was a tomato he was going to throw. I was, frankly, kind of accentuating the evidence a little bit. I don't know whether it ever says he was attempting to throw, but definitely wasn't eating it. I don't blame him. Yeah, it wouldn't be good, would it? But broccoli, if you'd eat broccoli above tomatoes, that's a little nervous on my part. Only Popeye would go for that. Only he likes spinach. Go ahead. So what was there in the record from the officer? Was there any articulation at all in the record from the officer regarding? I thought I remembered something about him saying that he had a concern about his safety. Your Honor, there is nothing in the record by the officer as far as what his concern was? No, that wasn't my question. I asked you was there anything in the record where the officer articulated that he had a concern about his safety. Nothing? There's nothing, Your Honor. He didn't say I had a concern about my safety? Specifically with regard to the order to put Mr. Young in the truck, he did not, Your Honor. Regarding anything? Oh, well, there was some mention of sensing some sort of a threat, I believe around the time of the baton strikes, but that's clearly a factual dispute, and we don't believe that his report. But is it a factual dispute that he sensed a threat? How would that be a factual dispute? Because he's talking about his experience and whether or not he was concerned for his safety. How would that be a factual dispute? As far as the excessive force claim, if the officer can articulate some sort of a reason for using the force, such as Mr. Young taking a combative stance, which I believe is what was written in the police report, but it was not introduced through any admissible evidence, and like I mentioned, the factual dispute there is Mr. Young claims clearly in his declaration that he never took a combative or aggressive stance. It's a little disconcerting for an officer to have to tell someone that number of times to get back in the truck. That conveys a sense of defiance, and that's a little bit disturbing for someone to take the stance, I'm not going to do what you tell me to do. I believe, Your Honor, his actual words were that he didn't feel like it. I understand it's not necessarily the largest distinction, but if you listen to the recording, which I believe is in the record, it's about 17 seconds, this back and forth about getting in the truck. It shouldn't be. When an officer tells you to do something, it shouldn't be back and forth. You can challenge it later, but that's how street encounters escalate to violence on the part of officers. From an officer's point of view, that would be disturbing for somebody to just go back and forth when you're trying to control a scene on the street. I think the distinction in this case, Your Honor, while there are several, most notably Mr. Young at the time is sitting on the curb eating some vegetables. He had just walked over and handed the deputy his registration all the way from his truck to the motorcycle, and the deputy didn't say at that point that he needed to get back in his truck. He allowed him to walk back, and some 30-odd seconds later, he starts ordering him to get back in the truck. It does not provide a reason why he wants him to get back in the truck. And Mr. Young does not physically resist anything. He's merely verbally saying, I disagree with this, and I don't feel like doing it. You know, I had a case a few months ago where a suspect went from sitting on a bench in the station to just out of nowhere, jumping the officer, trying to get his gun, and in a second, the officer was in a fight for his life. The second before, the suspect was sitting docile on a bench. So these things can escalate without warning. That's certainly the case, Your Honor, although there's no evidence in this case of that happening. But does the officer have to wait for that to happen before he takes measures to control the situation? Well, Your Honor, I think on the facts of this case, there's a reasonable inference that this order was arbitrary because Mr. Young was going to pose no more of a threat on the curb than he would have in this cluttered truck, and that the intrusion into his personal livery to have to sit in this hot truck, there's been no justification offered for that. I understand that there's some cases suggesting that at the outset of a traffic stop, the officer can have someone stay in the truck, stay in the car, or get out of the car. And that is to say that a person can be ordered back into the truck, back into the vehicle. That's at the outset of the stop to maintain the status quo, rather than someone who's already been stopped for some period of time and there's no credible safety threat, and yet there's an arbitrary order. I would analogize, perhaps, to a pedestrian stop where a person is stopped for jaywalking and the officer is writing them a ticket. I wonder if the outlook would be different if that person was ordered to go wait across the street or to do something else that was... You know, you're really off on your wrong argument. The question is whether it's excessive force. I mean, could the officer shoot him if he didn't get back into the truck? We're talking about the degree of force used and the cause for the force. So instead of talking about whether he could have told him to get back in the truck, which he could, I think your issue is whether the force used was excessive, considering what some people would call contempt of cop. You know, he didn't obey an order. What degree of force does that justify is the issue. So you've got three minutes. Maybe you want to save it for rebuttal and reconsider what you want to argue. Okay. If the court is more interested in the excessive force issue, I'll just very briefly state that if the concern for the officer was compliance with an order or even making an arrest, then no force really was necessary at this point. If Mr. Young had physically resisted or taken a combative stance or done something that implicated the officer defending himself or needing to prevent escape or... But it seems to me, and I echo what my colleague Judge Reinhart has suggested, it seems to me that when we're looking about excessive force, I'm thinking about what Judge Rollins has said as well, we wouldn't let one shoot based on some case law we've got. We wouldn't let one taser. Now we're talking about pepper spray. Would one have allowed the policeman to go over and grab his arm and force it in? Or is pepper spray a reasonable alternative to that? Because we certainly have some cases that would suggest we can't grab their arm and force it in. So I guess that's what I'm looking at, the reasonable force here. Yes, Your Honor. I think one of the elements of force is verbal skills and officer presence and persuasion. I mean, it isn't enough to say, well, he's got to say nothing. He's already commanded him five times. So are you really suggesting he's got to allow the kid to sit there and eat his spinach, or excuse me, broccoli, whether he likes it or not? I think if the officer is giving a lawful order and Mr. Young does not comply with that order, then he can be cited for 148 if he does not implement his first amendment. So he can only cite him, that's it? He can't get him back in? Is that what your argument is? I think he can get him back in, but he can't do it by the use of pepper spray without warning, Your Honor. And I'll reserve the rest of my time. Good morning, Your Honor. Steven Renick for the Appalese County of Los Angeles and Deputy Richard Wells. If I may address the question that was just asked, I think that is the heart of the excessive force claim, that if force was going to be used, was what the deputy did the appropriate level of force? And under the circumstances, there's very limited options in terms of force. I don't know whether there was a taser, but as Your Honor has mentioned, there are now questions about where that ranks on the hierarchy. And he had the choices of either physically interacting with him, grabbing him, hitting him. Well, he had several choices. He could have said, if you don't get back into the truck, I'm going to pepper spray you. I'm going to hit you with a baton. First, that's one alternative he had. The second alternative is, if you won't get back in the truck, I'm going to handcuff you. Put your hands up. Put your hands behind your back. Those are two alternatives. Those are alternatives that are other than force. Or lesser degrees of force. Well, I wouldn't characterize those as uses of force. Then there are alternatives without the use of force. Correct, Your Honor. And I think the issue is that the interaction between the officer and Mr. Young was pretty clear that Mr. Young was not going to cooperate, that he, as the record shows, he's a probation officer. He knew this was a sheriff's deputy. He was well aware of the interaction that was going on, and he was not cooperating. Well, you know, he was not cooperating, no question. You're absolutely right. He was not following the orders. The question is, what happens next? Do you use a baton, hit him over the head? I'm not suggesting they did. You're saying there are various things that can be done when someone doesn't follow a policeman's order. One thing is to tell him what you're going to do, you're going to use force, if he doesn't cooperate. Another is to ask him, tell him I'm going to arrest you. Put your hands up. I'm going to handcuff you. The other is to start to resort to force, and to what degree of force. You know, I don't think there was a lot of common sense used on either side in this encounter. I'm not going to challenge that one, Your Honor. I think that the language that we cited from Graham versus O'Connor, that an officer has the right to use a certain level of force to get compliance and control even in an investigatory style. But the question is, was this level of force used excessive under the circumstances, and why was it not excessive under the circumstances? Well, if we're looking at the options of force, I believe it is the lowest option that was realistically available. Well, that's of some question to me, I guess, because if I look at the factors, the severity of the crime, the biggest crime he had before he got there was he didn't have his seat belt. Once getting there, he may have had a little bit different crime in that he may have had a violation of a statute. But those are the best. Whether he posed a threat, I mean, I didn't see any evidence in the record at all that he posed any kind of threat except after the use of the pepper spray. It seems to me there was some idea that he might have been a threat, might have circled around and threw his broccoli or his tomato at him, one of the two. But that's all there is. And whether he was actively resisting detention, that didn't seem. He wasn't attempting to escape. So that's why these questions to you are pretty important. What could he do? I mean, he didn't even threaten things to the guy before he did it. I mean, he didn't do anything except turn it on him. I can't disagree with Judge Ron Hart's characterization that this could have been handled better on all sides. But the question, of course, is did the conduct go across, at least arguably across the legal line that has been established in the various case law? And, well, we don't have to approve of Deputy Well's conduct. But is that the jury question? If we set out the law, and the law is this, and now we have conduct that's right there, it's plus, con, you're even admitting there's a little con, then haven't we got to reverse the summary judgment and say, hey, maybe the jury ought to determine whether this really is excessive, of course, in this circumstance, given that he didn't give an alternative. He just threw it at him. And he could have done a few more threats. I agree it is very close to the line. I would still contend that it is. So why don't we just reverse and send it back and let the district court handle it? Well, it would be, obviously, the jury. No, no, from here on in, I mean, instead of our trying to solve this, if it's that close to the line, in your view, if you take the Miller factors, as Judge Smith mentioned, one severity of the crime, you can't think of anything less severe than not wearing a seat belt. Whether he posed an immediate threat, I mean, the guy's eating his broccoli. I mean, that also isn't very bright. But who likes broccoli? Well, I didn't want to say that. I thought you'd be right into that. So that wasn't much of a threat, eating the broccoli. And then whether he was actively resisting arrest or attempting to evade arrest by flight. Well, he didn't even try to arrest him. So you take those three factors. I mean, I think you're lucky that your opponent didn't ask the summary judgment himself, although it's unlikely Judge Reel would have granted it. But if you go back to Judge Reel, you're pretty close yourself to saying we ought to go send it back to Judge Reel. As an alternative, what about mediation?  We have, and we've utilized the court's mediation. And you weren't able to agree with the case this close? It's not so much. Both parties were willing. They couldn't come to a meeting. The number was just not there. But, again, while I certainly understand the court's concern, I do believe given that an officer does have the authority to control a circumstance, and we have unquestionably someone who is actively resisting that control, the officer's use of the But that's not one of the factors that we look at, resisting control versus resisting arrest. What case do you have that talks about the degree of force that can be used when a subject is resisting control as opposed to resisting arrest? I don't have any. I'm not aware of any case that factually is on point with this one, which would bring up the qualified immunity issue, at least in terms of the federal excessive force claim, that there isn't case law other than the Graham v. Connor indication that you can use force to exercise that control. There isn't a case that the officer would have known specifically prohibited this conduct under these circumstances. And so if the court does believe that there is a tribal issue on the excessiveness of the force, I would suggest that should be limited to the state law aspect of that. You know, this question of what is a clearly established law, whether a reasonable officer would understand, the difference isn't the broccoli. The facts don't have to be the same. They've said, and particularly in questions like force, how much force and under what circumstances, there the court said, you know, you've got a general principle that the reasonable person has to look at. It doesn't have to be the same facts. You know, it's not easy to understand exactly what they say when they say, you know. Each case really is different factually when you have a case like this, when you have when do you use a taser, when do you use pepper spray. You never get the same factual circumstances, but it comes down to when you've established those principles in a search and seizure case or a force case, you know, would a reasonable officer understand that? And I bet you if you took a poll in the LAPD, for example, I don't know about the sheriffs out in Lancaster, but if you took a poll in the LAPD, I think they would tell you, almost every officer who's been trained, that you couldn't use that kind of force in this kind of a case. I don't know. The record obviously doesn't, you know, elucidate that, but I do think the fact that there does not appear to be a case even approaching this general factual scenario, beyond just the general three-step process, is significant on the qualified immunity issue. Well, Judge Real didn't get to that issue, did he? He didn't ever get to the Prom 1-2 in 1983 claim. Judge Real only did this on the constitutional issue where there's a violation of the Constitution. He never got to anything about Prom 2 of qualified immunity. Why should we get there? Why shouldn't we give this back to the district court, who has a chance now to look at the facts and decide? I mean, especially given Headwaters Forest Defense v. Humboldt County, which is our case, 2002, which in effect says it's a violation of the Fourth Amendment to use pepper spray against someone who disobeys orders but otherwise does not suggest a threat. That's what that case says. It does. And it was in 2002, before 2007. But the factual circumstances, it wasn't an investigatory stopgap. Well, I understand that, but we do have some law out there, and maybe this ought to be something the district court ought to decide. Why are you asking us to do it? It isn't even in front of us. And, you know, if you do go to Judge Reo and he just says affirmed or denied or whatever, I hope you don't come back and give us the same problem on qualified immunity with it. You know, I mean, it's you may have a right to do it, and I don't want to take away your right to raise arguments, but the reason you don't have a case like this is because officers don't do this if they're well-trained. I am, again, I'm not going to fight that battle. I have nothing further on the excessive force, plus the court has questions on the other and the false imprisonment.  Thank you. And I don't think you need to argue either. No, Your Honor, we'll submit. Thank you. Case just argued and submitted. Thank you very much for your argument. Well, at least it was more interesting. Let's see what's next. Next case for oral argument is Alvarez versus Chevron.
judges: Reinhardt, Rawlinson, Smith N. R.